# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Novell Ohome,

               Plaintiff,

v.                                                    Case No. 1:21-cv-368-MLB

The United States of America, et al.,

               Defendants.

_____/

## **OPINION & ORDER**

Plaintiff Novell Ohome sues Defendant United States alleging tort claims, Defendant Ibraheem Ali alleging constitutional tort claims, and John Does 1–3.  (Dkt. 1.)  On May 6, 2021, Defendant Ali moved to dismiss under Federal Rule of Civil Procedure 12(b)(5) and (6).  (Dkt. 16.) The Court grants Defendant Ali's motion.  On June 15, 2021, Plaintiff moved for an extension of time to serve Defendant Ali.  (Dkts. 25; 26.)[1] Defendant Ali opposes any such extension.  (Dkt. 27.)  The Court denies as moot Plaintiff's motions.

---

[1] The Court notes these motions appear identical.

## I.    Background

On January 22, 2019, at about 9:00 p.m., Plaintiff entered the United States at Hartsfield-Jackson International Airport, returning from a family trip to Nigeria via the Netherlands.  (Dkt. 1 ¶ 13.)  As Plaintiff was going through Customs, a Customs officer instructed him to "go get" his bag from the nearby baggage carousel for inspection.  (*Id.* ¶ 14.)  Plaintiff obeyed and proceeded toward the carousel.  (*Id.* ¶ 15.) Plaintiff was wearing headphones but had nothing playing so he heard the initial instruction.  (*Id.* ¶ 16.)  Defendant Ali followed Plaintiff to the carousel and told him to take off his headphones.  (*Id.* ¶ 17.)  Plaintiff informed Defendant Ali that nothing was playing, and he could hear.  (*Id.* ¶ 18.) Defendant Ali, in an aggressive manner, responded saying, "I don't care—take them off!"  (*Id.* ¶ 19.)  Plaintiff complied.  (*Id.*)

The interaction intensified quickly.  Defendant Ali began "bragging" to Plaintiff, saying "Just so you know, I'm not a normal officer on the street . . .," implying that his actions or position made him invincible to redress.  (*Id.* ¶ 20.)  Plaintiff did not respond, and Defendant Ali (again in a bragging tone) said, "You can be a tough guy all you want, but you are going to end up in a cell tonight and I am going to go home."

(*Id.*)  Plaintiff was taken aback and began recording the incident on his phone.  (*Id.* ¶ 21.)  Defendant Ali immediately tried to grab Plaintiff's phone.  (*Id.* ¶ 22.)  Plaintiff moved his hands away.  (*Id.* ¶ 23.)  Suddenly and without warning, Defendant Ali "spear tackled" Plaintiff, forcefully body-slamming Plaintiff onto the baggage carousel and pinning Plaintiff's hands behind his back.  (*Id.* ¶ 24.)  Plaintiff was thrown so hard onto the carousel that his headphones (in his pocket) broke.  (*Id.*)  Other officers arrived at the scene.  (*Id.* ¶ 25.)  While holding Plaintiff face-down on the carousel, Defendant Ali pepper-sprayed him in the face.  (*Id.*)  Defendant Ali and the other officers handcuffed Plaintiff.  (*Id.*)  The officers continued to exert force on Plaintiff while he was handcuffed, kneeing him in the back and yanking his arms.  (*Id.*)  Defendant Ali and the other officers took Plaintiff to a holding cell but later released him without filing any charges.  (*Id.* ¶ 26.)

On January 22, 2021, Plaintiff sued Defendant Ali for damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for (1) excessive force and (2) unlawful detention and false arrest in violation of the Fourth Amendment.  (*Id.* ¶¶ 27–51.)  Defendant Ali moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) and (6).  (Dkt. 16.)

## II.    Legal Standard

### A.    Rule 12(b)(5)

Under Rule 12(b)(5), a defendant may bring a motion to dismiss for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  The burden is on the plaintiff to establish the validity of the service on the defendant. *Fitzpatrick v. Bank of N.Y. Mellon*, 580 F. App'x 690, 694 (11th Cir. 2014) (per curiam) ("Where a defendant challenges service of process, the plaintiff bears the burden of establishing its validity." (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981))).  "A defendant's actual notice is not sufficient to cure defectively executed service."  *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).

### B.    Rule 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This requires more

than a "mere possibility of misconduct." *Id.* at 679.  Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this plausibility determination, the court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010).  But the court need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).   "[L]abels and conclusions" are disregarded, and "formulaic recitation[s] of the elements of the cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III.  Discussion

### A.   Attached Documents

Defendant Ali attaches eleven exhibits to his motion to dismiss. (Dkts. 16-2–16-13.)  These include the Customs and Border Protection ("CBP") Directive on border searches of electronic devices, declaration of Matthew J. Maroccia (watch commander), TECS secondary inspection report on Plaintiff, Kareem Thorpe's employee statement, Defendant

Ali's employee statement, an Enforcement Action Statistical Analysis and Reporting System report for Plaintiff, Adam Hammond's employee statement, TECS system Privacy Impact Assessment Update, a summary of CBP facts and figures for FY 2019, and a document entitled "How to File a Complaint with the Department of Homeland Security." Courts in the Eleventh Circuit do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695–96 (11th Cir. 2014). There is an exception, however, "in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). While Defendant Ali states this rule and contends the materials "are central to [Plaintiff's] assertion of putative *Bivens* remedies," he does not contend, and the Court does not find, any of these exhibits are referenced in the complaint. (Dkt. 16 at 2.) The Court also does not find any of these documents are central to Plaintiff's claims and does not consider them.

Defendant Ali also requests, should the Court determine any of the exhibits cannot be considered in a motion to dismiss, the Court convert the motion to dismiss into a motion for summary judgment. "The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion." *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). Because the Court grants Defendant Ali's motion to dismiss without consideration of the exhibits, the Court finds it unnecessary to convert the motion. *See Elkins v. Elenz*, 516 F. App'x 825, 827 (11th Cir. 2013) ("Since the district court dismissed the complaint on its legal merits, it was unnecessary for it to consider the additional affidavits [the plaintiff] submitted. Accordingly, the district court did not err when it did not convert the motion to dismiss into a motion for summary judgment." (internal citation omitted)).

## B.   *Bivens*

Defendant Ali contends Plaintiff's claims should be dismissed because they seek to expand *Bivens* to a new context—specifically, custom screenings by Customs officers at an international airport—and special factors counsel against creating an implied damages remedy in this area. (Dkt. 16-1 at 7.)

In *Bivens*, the Supreme Court recognized an implied cause of action for damages for persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  403 U.S. at 397.  The Supreme Court then extended *Bivens* to a Fifth Amendment claim of gender discrimination, *Davis v. Passman*, 442 U.S. 228, 244 (1979), and to an Eighth Amendment claim of cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14, 18 (1980). "[T]he expansion of *Bivens* beyond the three contexts [the Supreme Court] has recognized is disfavored." *Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)); *see also Iqbal*, 534 U.S. at 68 ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001))).  Since deciding *Bivens*, *Davis*, and *Carlson*, the Supreme Court has refused to further extend the scope of *Bivens*.  It has specifically refused to extend such a claim for a cross-border shooting (*Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020)), Eighth Amendment violations against private prison operator (*Malesko*, 534 U.S. 61), First Amendment violations (*Bush v. Lucas*, 462 U.S. 367

(1983)), handling of Social Security applications (*Schweiker v. Chilcky*, 487 U.S. 412 (1988)), and race-discrimination in the military (*Chappell v. Wallace*, 462 U.S. 296 (1983)).

The Eleventh Circuit explained that the application is so limited because "[w]hen a party seeks to assert an implied cause of action under the Constitution . . . it is usually Congress who should decide whether to provide for a damages remedy, not the courts." *Johnson*, 781 F. App'x at 836 (citing *Abbasi*, 137 S. Ct. at 1857). Likewise, the Supreme Court recently advised that it is "reluctant to create new causes of action" in "constitutional cases," because "Congress is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1857). The Supreme Court recognized it has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 743.

In *Abbasi*, the Supreme Court explained that "[i]f [a] case is different in a meaningful way from previous *Bivens* cases decided by this

Court, then the context is new." 137 S. Ct. at 1859. The Supreme Court

provided examples of when a case might be different in a meaningful way:

> the rank of officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If a court determines a plaintiff's allegations extend *Bivens* liability

into a new context or category of defendants, the court must "proceed to

the next step and ask whether there are factors that counsel hesitation"

about granting the extension of a *Bivens* remedy. *Hernandez*, 140 S. Ct.

at 744. This "inquiry must concentrate on whether the Judiciary is well

suited, absent congressional action or instruction, to consider and weigh

the costs and benefits of allowing a damages action to proceed." *Abbasi*,

137 S. Ct. at 1857–58. Factors counseling hesitation can include

separation of powers principles, national security, the availability of

other remedies for the alleged wrong, and substantial costs imposed on

the government. *Hernandez*, 140 S. Ct. at 747–49.

10

### 1.   New Context

As noted, Defendant Ali contends Plaintiff's claims arise in the new context of Customs screening by CBP officers at an international airport. (Dkt. 16-1 at 10.)  The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743.  Even if differences "are perhaps small, at least in practical terms," the new context inquiry "is easily satisfied." *Abbasi*, 137 S. Ct. at 1865.

Defendant Ali argues Plaintiff's claims arise in a new context for various reasons.  (Dkt. 16-1 at 10–16.)  The Court agrees.  Plaintiff's *Bivens* claims differ in meaningful ways from the *Bivens* claims previously permitted by the Supreme Court.  First, while the plaintiff in *Bivens*, like Plaintiff here, alleged violations of his Fourth Amendment rights, the Supreme Court has rejected the idea that the "new context" analysis should be conducted at the amendment level.  *See Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").  Second, Plaintiff claims the incident occurred at the Atlanta International Airport (a functional equivalent of the border), where law enforcement's authority to conduct

searches is expanded,[2] while the search in *Bivens* took place inside the plaintiff's home, where an individual's expectation of privacy is at its greatest. *See Johnson v. United States*, No. 3:18-cv-2178, 2020 WL 3976995, at *5 (S.D. Cal. July 14, 2020) ("*Johnson II*") (finding the plaintiff seeks to extend *Bivens* to a new context because the defendants "were enforcing a different statutory or legal mandate than the officers in *Bivens* and the location where the claims arise [at the national border] constitutes a meaningful difference"); *Brown v. Transp. Sec. Admin.*, No. 20-64, 2021 WL 1206537, at *3 (W.D. Pa. Mar. 30, 2021) (finding a new *Bivens* context in part because the incident "took place at an airport"). Third, given the Executive Branch's role in securing, managing, and staffing airport inspection points, creating a *Bivens* remedy in this context poses a greater "risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860; *see also United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) ("It is axiomatic that the United States, as sovereign, has the inherent

---

[2] *See Almeida-Sanchez v. United States*, 413 U.S. 266, 273 (1973) ("[A] search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search.").

authority to protect, and a paramount interest in protecting, its territorial integrity."). Fourth, the search and arrest in *Bivens* was conducted by agents of the Federal Bureau of Narcotics (the predecessor to the Drug Enforcement Agency), whereas Defendant Ali is an officer with CBP. *See Hernandez*, 140 S. Ct. at 743 (directing courts to ask whether a case involves a new category of defendants); *Tun-Cos v. Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019) ("[I]n this case that the plaintiffs seek to extend *Bivens* liability to a new category of defendants—ICE agents."); *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) ("[Plaintiff] seeks damages from a new category of defendants. The defendants here are OCC officials, whereas the defendants in *Bivens* were federal narcotics agents; the defendant in *Davis* was a former member of Congress; and the defendants in *Carlson* were federal prison officials." (internal citations omitted)). Fifth, at the national border, CBP officers are charged with enforcing immigration and customs statutes and regulations, *see, e.g.*, 19 U.S.C. §§ 1467, 1496, 1582 and 19 C.F.R. § 162.6, which is different from the defendants in *Bivens* who unlawfully searched the plaintiff's home "from stem to stern." *Bivens*, 403 U.S. at 389 n.1.

Plaintiff contends his claims do not arise in a new context because the similarities between *Bivens* and this case.  (Dkt. 23 ¶ 9.)  He says, "[f]rom the standpoint of an American citizen, this case is not meaningfully different from *Bivens*" because both cases involve similarly ranked federal agents, unlawful detention and use of excessive force, the same legal framework as it pertains to the lawfulness of a search and seizure, U.S. citizens on American soil, on-the-spot decisions made in a short period of time, the unavailability of habeas corpus, and providing a necessary deterrent, and do not involve broad policies.  (*Id.* ¶¶ 9, 11–12.) Plaintiff fundamentally misunderstands the new context analysis.  That this case shares some similarities to *Bivens* is irrelevant.  *See Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) ("When one or more meaningful differences exist, it is not enough to identify a few similarities."); *Abbasi*, 137 S. Ct. at 1859 (the relevant inquiry is whether the claim before the court is "different in a meaningful way from the previous *Bivens* cases decided by [the Supreme Court]").  Plaintiff also contends, for several reasons, that this case is nothing like *Abbasi*, but Defendant never claimed this case involved the same meaningful differences as *Abbasi*. (*Id.* ¶ 13.)  And again, the relevant inquiry is simply whether the claim

before the court is different in *a* meaningful way.  To extend *Bivens* liability to conduct by Customs officers at an international airport would constitute the "disfavored judicial activity" the Supreme Court has specifically identified and warned against.  *Hernandez*, 140 S. Ct. at 742.

For all these reasons, the Court finds Plaintiff seeks to extend *Bivens* to a new context, and the Court must proceed to step two of the *Abbasi* test to determinate whether special factors exist that counsel hesitation before implying a new *Bivens* remedy.[3]

### 2.    Special Factors

Having determined Plaintiff's claims arise in a new context for *Bivens* liability, the Court must consider whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Carlson*, 446 U.S. at 18 (quoting *Bivens*, 403 U.S. at 396). The "special factors counseling hesitation" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi,* 137 S. Ct. at 1857–58.  "[T]o be a

---

[3] The Court notes Defendant Ali addresses other reasons why Plaintiff's claims arise in a new context, but the Court finds the reasons discussed herein are sufficient.

'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858. Special factors can include "military concerns, separation of powers, the comprehensiveness of available statutory schemes, national security concerns, and foreign policy considerations." *Alvarez v. U.S. Immigr. and Customs Enforcement*, 818 F.3d 1194, 1206 (11th Cir. 2016) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009)). The Court also considers whether the plaintiff has other forms of relief. *Hernandez*, 140 S. Ct. at 750.

Plaintiff, partly relying on *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018), contends no special factors are present precluding the extension of *Bivens*. (Dkt. 23 ¶¶ 18–21.) The Court disagrees. (*Id.* ¶ 18.) *Lanuza* involved a government attorney who submitted falsified evidence during immigration proceedings "to completely bar an individual from pursuing relief to which he was entitled." 899 F.3d at 1034. The Ninth Circuit held that while the case presented a new *Bivens* context, an extension of *Bivens* liability was acceptable because "a run-of-the-mill immigration proceeding" was "unrelated" to national security. *Id.* at 1028, 1030. The court also noted the allegations involved lying during a judicial

proceeding and "[j]udges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system." *Id.* at 1032.  Plaintiff's claims do not involve any alleged interference with judicial proceedings.   They involve investigative decisions at an international airport, an area in which judges have no obvious insight as a result of their day-to-day experience.  *Lanuza* is simply irrelevant.  *See Medina v. Danaher*, 445 F. Supp. 3d 1367, 1373 (D. Colo. 2020) (distinguishing *Lanuza* because the conduct for which the plaintiff sought a remedy was not conduct that comprised adjudicative proceedings).

Defendant Ali also addresses many special factors counselling the Court's hesitation.  (Dkt. 16-1 at 18–24.)  Defendant Ali points out that Plaintiff's claims implicate border security (an element of national security) and a new *Bivens* remedy could encroach on the authority of the political branches in this area.  *See Abbasi*, 137 S. Ct. at 1861 ("National-security policy is the prerogative of the Congress and President.") Plaintiff contends national security policies are not at issue because the incident involves only one officer's conduct in searching and detaining someone at the border.  (Dkt. 23 ¶ 18.)  First, Defendant has not claimed

this case involves national security *policies*.  Second, "[t]he fact that the plaintiffs challenge the direct and substantial involvement of . . . *individuals*, rather than high-level, government-wide national defense policies, does not mean that national security concerns did not exist." *Black Lives Matter D.C. v. Trump*, --- F.3d ----, 2021 WL 2530722, at *6 (D.D.C. June 21, 2021).  Third, "[t]he question is not whether national security requires such conduct . . . but whether the Judiciary should alter the framework established by the political branches." *Hernandez*, 140 S. Ct. at 746.  "Judicial inquiry into the national-security realm raises 'concerns for the separation of powers.'" *Id.* at 747 (quoting *Christopher v. Harbury*, 536 U.S. 403, 417 (2002)).

"The Supreme Court has never implied a *Bivens* remedy in a case involving the military, national security, or intelligence." *Hernandez v. Mesa*, 885 F.3d 811, 818–19 (5th Cir. 2018) ("*Hernandez II*") (quoting *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012)).  Plaintiff's claims occurred at an international airport after he returned from a family trip to Nigeria via the Netherlands—the functional equivalent to the national border, where the "[g]overnment's interest in preventing the entry of unwanted persons and effects is at its zenith." *Flores-Montano*, 541 U.S.

at 152.  In *Hernandez*, the Supreme Court refused to extend *Bivens* to a

cross-border shooting case in which a border patrol agent standing in the

United States allegedly shot and killed a boy who was on the Mexican

side of the border.  140 S. Ct. at 741.  The Supreme Court explained that

"[o]ne of the ways in which the Executive protects this country is by

attempting to control the movement of people and goods across the

border, and that is a daunting task."  *Id.* at 746.  Protecting the border,

"rests primarily with the U.S. Customs and Border Protection Agency."

*Id.* (citing 6 U.S.C. § 211(c)(5)).  "Since regulating the conduct of agents

at the border unquestionably has national security implications, the risk

of undermining border security provides reason to hesitate before

extending *Bivens* into this field."  *Id.* at 747.

> While *Hernandez* may be distinguished as involving a cross-
> border shooting, the Court balances the national security
> implications at play in *Bivens*, which occurred inside the
> plaintiff's Brooklyn, New York apartment and those at play in
> *Hernandez*. On balance, the national security concerns at play
> in *Hernandez* are closer to the claims here – enough so to
> cause the Court [to] "hesitate" before answering it "is well
> suited, absent congressional action or instruction, to consider
> and weigh the costs and benefits of allowing a damages action
> to proceed."

*Johnson II*, 2020 WL 3976995, at *5.  The Court concludes the potential

national security concerns of extending a *Bivens* remedy to conduct

occurring at the border is a special factor counseling hesitation.  *See Hernandez*, 140 S. Ct. at 746 ("[C]onduct of agents positioned at the border has a clear and strong connection to national security.").

Defendant Ali also contends airport security presents a related, but distinct, special factor counseling hesitation.  (Dkt. 16-1 at 20.)  Another court agrees.  In *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017), the plaintiff asked the court to imply a *Bivens* action for damages against a Transportation Security Administration ("TSA") Agent.  868 F.3d at 207.  The Third Circuit found that TSA employees are "tasked with assisting in a critical aspect of national security—securing our nation's airports and air traffic."  *Id.*  And the "threat of damages liability could indeed increase the probability that a TSA agent would hesitate in making split-second decisions about suspicious passengers," which the court found to be a special factor that gave it pause.  *Id.*  This Court reaches the same conclusion.  The need for Customs officers to prevent the introduction of dangerous items and persons and how *Bivens* liability might impact their ability to do so effectively is a special factor counseling hesitation.

Defendant Ali argues Congress has extensively legislated and made policy choices in the arena of customs and airport security without creating personal liability for Customs officials.  (Dkt. 16-1 at 20.)  He says this indicates Congress's intention to preclude such liability.  In *Abbasi*, the Supreme Court emphasized that Congress's silence may be relevant and telling, especially where "Congressional interest" in an issue "has been frequent and intense."  137 S. Ct. at 1862.  "It is 'much more difficult to believe that congressional inaction was inadvertent' given the increasing national policy focus on border security."  *Hernandez II*, 885 F.3d at 820 (quoting *Abbasi*, 137 S. Ct. at 1862).  This is thus another special factor counseling hesitation.

Defendant Ali further contends there are practical concerns weighing against the judicial creation of a damages remedy in this context.  (Dkt. 16-1 at 22.)  In *Abbasi*, the Supreme Court cautioned "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide."  137 S. Ct. at 1858.  "The threat of damages liability could indeed increase the probability that [a CBP officer] would hesitate in making split-second decisions."

*Vanderklok*, 868 F.3d at 207.   Practical concerns thus also constitute a special factor counseling hesitation.

Finally, Defendant Ali argues there are alternative processes in place for Plaintiff to challenge the alleged conduct.   (Dkt. 16-1 at 22–24.) "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."   *Abbasi*, 137 S. Ct. at 1858.   Defendant Ali contends Plaintiff can seek relief through the DHS Travel Redress Inquiry Program ("TRIP").   (Dkt. 16-1 at 23.)   TRIP "is essentially a clearinghouse for traveler grievances," *Vanderklok*, 868 F.3d at 205, including "delayed entry into or exit from the U.S. at a port of entry or border crossing." *DHS Traveler Redress Inquiry Program (DHS TRIP)*, Homeland Security (Oct. 15, 2020), https://www.dhs.gov/dhs-trip.[4]  Defendant Ali also argues Plaintiff has a suit against the United States under the FTCA.   (Dkt. 16-1 at 24.)   The complaint includes five counts against the United States under the FTCA.   (Dkt. 1 ¶¶ 52–95.)   Although the FTCA is not a

---

[4] This information is publicly available on a government website and therefore the Court takes judicial notice of it.   *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of . . . information . . . made publicly available by government entities.").

substitute for a *Bivens* action, it is still an effective and available remedy to be considered with other special factors. *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134–35 (N.D. Ala. 2017) ("While the FTCA remedy does not afford the same scope of damages as a *Bivens*-type action based directly on the Constitution, it remains an effective and available remedy."). The Court thus considers the potential availability of FTCA remedies alongside the other special factors counselling hesitation. *See Olivia v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) ("The Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would. That the FTCA might not give [the plaintiff] everything he seeks is therefore no reason to extend *Bivens*." (internal citation omitted)).

The special factors are to be taken together. *Chappell*, 462 U.S. at 304 (1983). The Court considers the combined weight of these special factors and remembers that when extending *Bivens*, the "watchword is caution." *Hernandez*, 140 S. Ct. at 742. The Court concludes the special factors counsel against extension of a *Bivens* remedy in this case and

rejects Plaintiff's request to do so.  The Court thus dismisses Plaintiff's claims against Defendant Ali.[5]

## IV.   Conclusion

The Court **GRANTS** Defendant Ali's Motion to Dismiss (Dkt. 16).

The Court **DENIES AS MOOT** Plaintiff's Motions for Extension of Time to Serve Defendant (Dkts. 25; 26).

**SO ORDERED** this 6th day of December, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court grants Defendant Ali's motion pursuant to Rule 12(b)(6), the Court will not address the allegation of insufficient service of process.  The Court also will not address Plaintiff's motions for extension of time to serve.  (Dkts. 25; 26.)